**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

GABRIEL GUARDIOLA,

              Plaintiff,

   v.

BRITTANY GREENE, Warden,

          Defendant.

Case No. 1:24-cv-05861

Honorable Sunil R. Harjani

## <u>MEMORANDUM OPINION AND ORDER</u>

Petitioner Gabriel Guardiola is serving a prison term of 55 years for first-degree murder. Petitioner is currently in the custody of Respondent Brittany Greene, warden of Western Illinois Correctional Center. Presently before the Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. [7].[1] Respondent asks this Court to deny the habeas corpus petition. [19]. For the reasons stated below, the Court denies the petition and declines to issue a certificate of appealability.

---

[1] The Clerk's Office initially received the Petition on July 8, 2024, but it was not formally filed on the docket until the filing fee was paid on July 22, 2024. *See* [1], [6], [7]. The petitions at [1] and [7] are the same. The Court uses the filed petition for this Opinion. [7].

## Background[2]

On January 30, 2015, a jury found Petitioner guilty of the first-degree murder of Ricardo Rivera and the trial court sentenced Petitioner to 55 years in the Illinois Department of Corrections. [7] at 1; *People v. Guardiola*, 2019 IL App (1st) 151419-U, ¶ 26 (*Guardiola I*). All charges arose from a shooting on the morning of February 24, 2013. *Guardiola I*, 2019 IL App (1st) 151419-U, ¶ 6.

Petitioner and Rivera were drinking alcohol and smoking marijuana at a strip club in the early morning of February 24, 2013. *Id*. The two left the club around 4 a.m. in Petitioner's car. *Id*. ¶ 7. At some point, Rivera stepped out of the car. *Id*. Both Rivera and Petitioner tried calling their mutual friend, Evangelisto Candelario. *Id.* Petitioner left Candelario a voicemail saying, "He doesn't want to get back in the car. This shit's going to haunt me. I'm going to shoot him." *People v. Guardiola*, 2023 IL App (1st) 221872-U, ¶ 7, appeal denied, 232 N.E.3d 5 (Ill. 2024) (*Guardiola II*). Rivera continued to walk until he reached the parking lot next to a liquor store, while Petitioner drove alongside him. *Guardiola I*, 2019 IL App (1st) 151419-U, ¶ 9. Petitioner exited his car with his gun in his right hand while Rivera appeared to urinate on the wall. *Id*. As Rivera faced the wall of the liquor store, Petitioner pushed him and engaged in a minor scuffle. *Id.* While Rivera was standing near the wall, Petitioner raised his right arm and fired his gun; Rivera fell to the ground.

---

[2] In reviewing a petition for federal habeas corpus, the Court must presume that the state court's factual determinations are correct unless Petitioner rebuts those facts by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Weaver v. Nicholson*, 892 F.3d 878, 881 (7th Cir. 2018). Petitioner does not challenge any of the underlying facts in his petition. The Court therefore adopts the recitation of the facts set forth in the Illinois Appellate Court's orders denying Petitioner's direct and postconviction appeals. *See People v. Guardiola*, 2019 IL App (1st) 151419-U; *People v. Guardiola*, 2023 IL App (1st) 221872-U, appeal denied, 232 N.E.3d 5 (Ill. 2024). The facts regarding the procedural history of this case come from the petition and the state court record that Respondent provided pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts.

*Id.* Petitioner then returned to his car and drove away without calling 911. *Id.* A security camera attached to the liquor store recorded the shooting. *Id.* ¶ 12.

After the shooting, that same morning, Petitioner visited his girlfriend and engaged in sexual activity at the beach. *Id.* ¶ 10. He then traveled to his wife's house to leave his gun in a drawer in the basement. *Id.* He left the house to meet a dancer from the strip club at a hotel. *Id.* While Petitioner was at the hotel, Candelario called him to see if everything was okay. *Id.* ¶ 14. Petitioner told him that everything was "cool," that he was at a hotel, and that Rivera had gotten into a fight with "a couple of black guys." *Id.* Candelario asked Petitioner about the voicemail stating that Petitioner was going to shoot Rivera, and if Petitioner knew what he was talking about; Petitioner responded, "Oh, no," and ended the call. *Guardiola II*, 2023 IL App (1st) 221872-U, ¶ 9. Later at noon, Petitioner called Candelario and said, "They got him. They shot him." *Id.* ¶ 10.

The police went to the victim's home to notify the family. *Guardiola I*, 2019 IL App (1st) 151419-U, ¶ 13. Petitioner drove to the victim's house around 12:45 p.m. *Id.* ¶ 16. The police wanted to speak with Petitioner, as he was one of the last known people who saw the victim alive. *Id.* Petitioner told police he knew the black men who killed Rivera. *Id.* He told police that he left Rivera outside the strip club after they were kicked out, and that afterwards he spent time with his girlfriend, went to his wife's home, and met the dancer at a hotel. *Id.* ¶ 17. Petitioner then rode along with police to identify the locations he had visited that night. *Id.* When Petitioner and the officers returned to Rivera's home, Candelario was also there. *Id.* ¶ 18. Candelario told the officers to lock the doors with Petitioner in the vehicle and played Petitioner's voicemail from the early morning. *Id.* The officers placed Petitioner under arrest. *Id.*

## I.     Trial Proceedings

Petitioner's trial began on January 27, 2015, and concluded on January 30, 2015. [20–16] at 6, 11.  As relevant to this petition, Petitioner testified at trial. *Id.* at 741.  He testified that he was driving Rivera home from the strip club. *Guardiola I*, 2019 IL App (1st) 151419-U, ¶ 22.  Petitioner said that they were arguing over Rivera's conduct in the strip club and the fact that Rivera owed Petitioner money. *Id*.  Rivera threatened to kill Petitioner. *Id*.  Petitioner removed a gun from the driver's side door pocket and placed it on the center armrest before telling Rivera, "You want to kill me? I have my gun. There it is." *Id*.  Rivera picked up the gun, played with it briefly, and then returned it to the armrest.  Petitioner then ordered Rivera out of his car. *Id*.  Petitioner also testified about his subsequent voicemail to Candelario. *Id*. ¶ 23.  He insisted that the voicemail was not serious and that he was trying to get Candelario's attention. *Id*.  He said that he attempted to scare Rivera by firing one round at the nearby brick wall; Petitioner was "looking away" when he pulled the trigger, and instead accidentally shot Rivera in the head, killing him. *Id*. ¶ 24.  He testified that he lied about the shooting because he panicked and was afraid of the police and Candelario. *Id*. ¶ 25.

Petitioner intended to call his wife as a "very important character witness" to testify to his peaceful character at trial. *Id*. ¶ 41.  Trial counsel's opening statement told the jury that his wife would be called as a witness. *Id.*  Prior to her testimony, the court ruled that Petitioner could call his wife as a witness, but would also allow the State to question her about her knowledge of the charges against Petitioner. *Id.*  Defense counsel did not challenge the ruling and decided to not call the wife as a character witness. *Id.* ¶ 42; [20–16] at 688:9–18.

In his closing argument, trial counsel argued that Petitioner did not intend to kill Rivera. *Guardiola I*, 2019 IL App (1st) 151419-U, ¶ 65.  Trial counsel made several references to the

distinction between involuntary manslaughter and murder, and argued that the Petitioner "did not have the intent to kill and did not know that his actions created a likelihood of death or great bodily harm." *Id.* Trial counsel made the following remarks to describe strong probability of death or great bodily harm:

> "That is stronger and different than what [the State has] to prove for involuntary manslaughter. Involuntary manslaughter is conscious disregard and known risk is likely – likely to cause death or great bodily harm. Strong probability for murder requires something else. In common parlance, it requires knowledge; and you know from common sense and life experience, that knowledge is knowledge. You know it was a strong probability, that you know. It's much, much, much stronger, much, much – you know that you're creating – that you're doing what you're doing."[3]

The jury found Petitioner guilty of murder. *Guardiola I*, 2019 IL App (1st) 151419-U, ¶ 2.

## II. Direct Appeal

The Illinois Appellate Court affirmed Petitioner's conviction on May 31, 2019. *Guardiola I*, 2019 IL App (1st) 151419-U, ¶ 72. Petitioner argued, in relevant part, that (1) the trial court committed error by allowing the State to question Petitioner's wife about her knowledge of the charges, effectively precluding the defense from calling the wife as a character witness and (2) counsel was ineffective for not calling a ballistics expert to testify about the inaccuracy of the firearm, for not using Petitioner's intoxicated condition to argue recklessness, and for confusing the jury with his closing argument. *Id.* ¶ 28.

In affirming the conviction, the appellate court held that no error occurred in allowing the State to question Petitioner's wife because Illinois Rule of Evidence 405(a) permitted her cross examination. *Id.* ¶¶ 41–45. Instead, the court concluded that if Petitioner's "wife had testified to [his] character for peacefulness, it would have been proper to allow the State to rebut that testimony

---

[3] *Id.* ¶ 64; [20–16] at 899:8–20.

by asking her whether her knowledge of the crime would change her opinion about [Petitioner's] peacefulness." *Id.* ¶ 45.

The appellate court also held that the ineffective assistance of trial counsel grounds lacked merit under the *Strickland v. Washington*, 466 U.S. 668 (1984), standard. *Id.* ¶ 61. First, regarding the claim about counsel's failure to call a ballistics expert, the court found that that claim should have been brought on postconviction review instead of direct appeal because it involved matters outside the record. *Id.* ¶ 62. Second, the court found that the Petitioner failed to show that counsel was ineffective in using the intoxicated condition to argue recklessness: the record established that counsel did reference Petitioner's use of alcohol and marijuana during closing, and counsel's emphasis on the intoxicated condition is a matter of trial strategy that courts afford deference. *Id.* ¶ 63. Third, as for the closing argument, while trial counsel was "not very clear" in that excerpt of the closing argument, the appellate court reviewed the excerpt in the context of the entire closing argument. *Id.* ¶ 65. Because trial counsel "stated several times… that [Petitioner] did not have the intent to kill" during the closing argument, the court held that counsel's performance was not objectively unreasonable. *Id.*

## III.    Petitioner's Petition for Leave to Appeal

Petitioner filed a petition for leave to appeal with the Illinois Supreme Court. [20–5]. He claimed ineffective assistance of trial counsel where his attorney failed to present evidence regarding the gun's light trigger pull to show that the shooting was an accident, failed to highlight Petitioner's intoxication to support an involuntary manslaughter conviction, and made a confusing closing argument. *Id*. at 2. Petitioner also claimed that the Sixth Amendment right to confront witnesses was violated when he could not question the medical examiner who performed the

autopsy on Rivera. *Id*. at 10. The Illinois Supreme Court denied this petition on September 25, 2019. *People v. Guardiola*, 132 N.E.3d 289 (Ill. 2019).

## IV.    Postconviction Petition and Appeal

In relevant part, Petitioner argued ineffective assistance of trial counsel in his petition for postconviction relief. *Guardiola II*, 2023 IL App (1st) 221872-U, ¶ 2. He argued that counsel failed to utilize Petitioner's drug use and addiction, failed to present evidence regarding Petitioner's lack of experience with firearms, and failed to present evidence regarding the difficulty in aiming the gun to adequately support a theory of involuntary manslaughter. *Id.* The trial court dismissed the petition for postconviction relief and the appellate court affirmed. *Id.* ¶ 35.

## V.    Postconviction Petition for Leave to Appeal

Petitioner filed a petition for leave to appeal to the Illinois Supreme Court for his postconviction dismissal. [20–13]. Petitioner again argued that his trial counsel failed to present evidence about Petitioner's inexperience with guns, the difficulty in aiming the gun, and Petitioner's PCP and cocaine use and addiction. *Id.* at 4–13. The Illinois Supreme Court denied his petition on March 27, 2024. *People v. Guardiola*, 232 N.E.3d 5 (Ill. 2024)

## Discussion

In his writ of habeas corpus, Petitioner brings three claims under the Antiterrorism and Effective Death Penalty Act (AEDPA) 28 U.S.C. § 2254: (1) Petitioner argues he received ineffective assistance of trial counsel, first because trial counsel failed to preserve the claim that the trial court refused to tender an involuntary manslaughter jury instruction, and second because trial counsel misled the jury during closing arguments about the distinction between knowing and reckless conduct for involuntary manslaughter; (2) Petitioner argues that Illinois Rule of Evidence 405(a) violates Spousal Testimonial Privilege, the Confrontation Clause of the Sixth Amendment,

and the Due Process Clause of the Fourteenth Amendment, and that trial counsel was ineffective for failing to preserve that claim; (3) Petitioner alleges ineffective assistance of trial counsel for advising Petitioner to testify. [7] at 16, 20, 23.

Title 28, United State Code, Section 2254 allows state prisoners to petition for a writ of habeas corpus. State prisoners may raise federal claims to challenge their state convictions after completing all state proceedings. A court may grant relief only when the state court's decision on the merits of the petitioner's claim is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). In the Seventh Circuit, a state court decision is "contrary to" Supreme Court precedent if it either did not apply the proper legal rule or if the decision applied the correct rule but reached the opposite result from the Supreme Court on materially indistinguishable facts. *Meyers v. Gomez*, 50 F.4th 628, 641 (7th Cir. 2022). A state court decision is "an unreasonable application of Supreme Court precedent when it applies that precedent in a manner that is 'objectively unreasonable, not merely wrong.'" *Id.* (quoting *Woods v. Donald*, 575 U.S. 312, 316 (2015)). "AEDPA's standard is intentionally 'difficult to meet.'" *Woods*, 575 U.S. at 316 (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)). Further, factual determinations of a state court are presumed reasonable unless a petitioner can show otherwise by clear and convincing evidence. *Conner v. McBride*, 375 F.3d 643, 649 (7th Cir. 2004).

## I. Procedural Default

First, to raise a claim of error in federal habeas proceedings, the petitioner must exhaust state remedies. *Id.* at 648. "In order to preserve a federal claim for review in a habeas proceeding, a petitioner must first present it to the state courts through one full round of review, alerting those courts as to the federal nature of the claim when he does so." *Meyers*, 50 F.4th at 646. One full

round of review requires presenting the claim at each and every round of state court review, including the state supreme court. *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014). When a petitioner fails to bring the claim in state court and the opportunity to do so has lapsed, then he has procedurally defaulted on his claim. *Lieberman v. Thomas*, 505 F.3d 665, 669 (7th Cir. 2007).

Courts consider ineffective assistance of counsel as one claim because counsel's performance is evaluated "as a whole," but prisoners must still exhaust each factual basis for the claim of ineffective assistance. *Pole v. Randolph*, 570 F.3d 922, 934 (7th Cir. 2009). When a prisoner raises multiple factual basis for ineffective assistance of counsel, then, the court may determine that a particular factual basis is procedurally defaulted if the petitioner failed to assert that basis in state court. *Id.* at 935.

A federal court can hear the claim on the merits if the prisoner can excuse their procedural default, requiring the prisoner to "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The petitioner needs to show both cause and prejudice. *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). "Establishing cause ordinarily requires demonstrating an external obstacle preventing the petitioner from fairly presenting the federal claim in state court, and actual prejudice, not merely a possibility of prejudice, is required." *Anderson v. Benik*, 471 F.3d 811, 815 (7th Cir. 2006). To show actual prejudice, the petitioner must demonstrate "that the constitutional violation worked to [their] *actual* and substantial disadvantage." *Kustok v. Mitchell*, 99 F.4th 1066, 1074 (7th Cir. 2024) (quoting *Shinn v. Ramirez*, 596 U.S. 366, 379–80 (2022)) (alterations in original). A fundamental miscarriage of justice requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327

(1995). If a petitioner does not allege that he can excuse a defaulted claim, then the court may not reach the merits of the claim. *Anderson*, 471 F.3d at 815.

For the reasons discussed below, the Court finds that the first part of Claim 1, and the entirety of Claims 2 and 3, are procedurally defaulted. Petitioner properly preserved the second part of Claim 1, but that claim fails on the merits.

### a. Claim 1 – Involuntary Manslaughter Jury Instruction

Petitioner argues ineffective assistance of trial counsel for failing to preserve the claim that the trial court refused to tender an involuntary manslaughter jury instruction. [7] at 16–18. Specifically, Petitioner argues that trial counsel was ineffective for failing to object to the court's denial of an involuntary manslaughter jury instruction, failing to raise the refusal in any post-trial motions, and failing to preserve that issue for appellate review. *Id*. Respondent contends that the claim of ineffective assistance for failing to preserve this claim is procedurally defaulted because Petitioner did not raise it for review in state court. [19] at 7. Petitioner replies that the Court should still review that ground because a rational jury could have found him guilty of involuntary manslaughter instead of murder, and trial counsel's deficiencies denied him effective assistance of counsel and due process. [23] at 9–11.

As noted above, a petitioner must raise a claim for ineffective assistance of counsel for a full round of review in state court before he may raise it in federal habeas proceedings. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A petitioner must assert a particular factual basis for an ineffective assistance of counsel claim in state court to avoid a procedural default. *Pole*, 570 F.3d at 935. For example, in *McNary v. Lemke*, while the petitioner had raised ineffective assistance of counsel in state court, the petitioner did not previously raise the underlying facts regarding counsel's failure to question a particular police officer more thoroughly; the petitioner

10

raised in state court his counsel's failure to question other individuals, including other police officers, but not the officer in question. 708 F.3d 905, 919 (7th Cir. 2013). Thus, the court found that the petitioner procedurally defaulted on this new ground for ineffective assistance of counsel that he brought for the first time in his habeas petition. *Id*.

Like the petitioner in *McNary*, Petitioner's federal habeas petition is the first time he raises the issue of ineffective assistance of counsel relating to the alleged failure to object to the trial court's refusal to tender an involuntary manslaughter jury instruction. 708 F.3d at 919. While Petitioner asserted various ineffective assistance of counsel claims on appeal and in his postconviction proceedings, he did not raise an ineffective assistance claim for failing to object to or preserve a claim for refusing to tender certain jury instructions. *Guardiola I*, 2019 IL App (1st) 151419-U; *Guardiola II*, 2023 IL App (1st) 221872-U. The record also does not reflect that Petitioner claimed that counsel was deficient in failing to raise that issue in a post-trial motion or preserve the issue for appellate review. Instead, Petitioner previously argued that trial counsel was ineffective for not calling a ballistics expert to testify about the inaccuracy of a firearm and not using Petitioner's intoxicated condition to argue recklessness. Those factual basis for ineffective assistance of counsel do not resemble the Petitioner's argument in the federal habeas petition. The Court finds that this ground is procedurally defaulted.

Because Petitioner does not allege that he meets the requirements for the exceptions to procedural default, cause and prejudice or a fundamental miscarriage of justice, the Court need not reach the merits of this basis for ineffective assistance of counsel. *See Anderson*, 471 F.3d at 815. However, even assuming this ground was not procedurally defaulted, the trial court record reflects that defense counsel requested Illinois Pattern Jury Instructions Nos. 7.07 and 7.08. [20–16] at 860:12–22. The court tendered those instructions, saying:

11

> A person commits the offense of involuntary manslaughter when he unintentionally causes the death of an individual by acts which are performed recklessly and are likely to cause death or great bodily harm to another. To sustain the charge of involuntary manslaughter, the State must prove the following propositions: The Defendant performed the acts which caused the death of Ricardo Rivera. And second, that Defendant performed those acts recklessly. And third, that those acts were likely to cause death or great bodily harm. If you find from your consideration of all the evidence, that each one of these propositions have -- has been proven beyond a reasonable doubt, you should find the Defendant guilty of involuntary manslaughter. If you find from your consideration of all the evidence that any one of these propositions has not been proven beyond a reasonable doubt, then you should find the Defendant not guilty.[4]

These instructions are in line with Illinois Pattern Jury Instructions Nos. 7.07 and 7.08.[5] There would be no reason for trial counsel to object to the court's denial of an involuntary manslaughter jury instruction if it was actually given. The same goes for allegedly failing to preserve the issue for appellate review. Because the trial court tendered the requested jury instructions, Petitioner's ground for ineffective assistance of counsel would also lack merit.

### b. Claim 1 – Confusing Closing Argument

Next, Petitioner argues that he received ineffective assistance of trial counsel for misleading the jury during closing arguments about the distinction between knowing and reckless conduct. Respondent does not contend that this ground is procedurally defaulted. [19] at 9.

A review of the record shows that Petitioner brought this ground through one complete round of review during his criminal proceeding. Petitioner argued on direct appeal that his trial counsel confused the differing burdens of proof and conceded that Petitioner committed murder during closing arguments. [20–2] at 43. The appellate court denied this ground on the merits. *Guardiola I*, 2019 IL App (1st) 151419-U, ¶ 64–65. Petitioner continued to argue this ground in

---

[4] [20–16] at 928:2–24.

[5] *See* Illinois Pattern Criminal Jury Instructions – 7.00 Homicide, Illinois Courts, 28–29 (2015), https://www.illinoiscourts.gov/Resources/2f790ccf-b24f-4098-937f-027fae75373c/CRIM_07.00_prior_to_013015.pdf.

his petition for leave to appeal to the Illinois Supreme Court. [20–5] at 14. The Court finds that Petitioner properly exhausted this ground for ineffective assistance of counsel and will further address the merits below.

### c. Claim 2 – Rule 405(a)

Second, Petitioner claims that Illinois Rule of Evidence 405(a) violates Spousal Testimonial Privilege, the Confrontation Clause of the Sixth Amendment, and the Due Process Clause of the Fourteenth Amendment, because the State could question the Petitioner's wife about her knowledge of the charges against her husband and effectively precluded Petitioner from calling his wife to testify. [7] at 20–22. Petitioner further argues that he received ineffective assistance of both trial and appellate counsel for failing to preserve the claim that Rule 405(a) is unconstitutional. *Id*. Respondent argues that this claim is procedurally defaulted, because Petitioner raised the issue of his wife testifying as an evidentiary issue, not a federal constitutional issue, in state court and he abandoned that claim in his petition for leave to appeal to the Illinois Supreme Court. [19] at 8–9. Petitioner replies that the Court should still hear the claim because the claim is "federally grounded" on a constitutional right. [23] at 2.

State courts must be "given the opportunity to address the underlying issue," or the factual and legal basis for the claim. *Lewis*, 390 F.3d at 1026. A claim is procedurally defaulted when it is not presented at each and every level of state court review. *Id*. at 1025. This includes presenting the claim to the state supreme court. Failure to do so will result in a procedural default. As an example, in *Anderson v. Cowan*, the petitioner did not include his claim in his petition for appeal to the Illinois Supreme Court and therefore procedurally defaulted that claim. 227 F.3d 893, 900–901 (7th Cir. 2000). Similarly, in *O'Sullivan*, the petitioner failed to present three of his habeas

claims to the Illinois Supreme Court in his petition for leave to appeal, so he procedurally defaulted on those claims. 526 U.S. at 848.

Petitioner does not address Rule 405(a) anywhere else outside of the direct appeal: not in his petition for leave to appeal to the Illinois Supreme Court or any of his postconviction proceedings. On direct appeal, Petitioner argued that the trial court committed error by allowing the State, under Rule 405(a), to question Petitioner's wife about her knowledge of the charges, effectively precluding the defense from calling the wife as a character witness. [20–2] at 33. But his petition for leave to appeal argued the following claims: (1) Petitioner should have been able to confront the medical examiner who performed the autopsy; (2) Petitioner lacked effective assistance of counsel when his attorney (a) did not present evidence about the trigger pull of the gun, (b) failed to apprise the jury of the relevance of Petitioner's intoxicated condition, and (c) gave a confusing closing argument. [20–5] at 2, 10–16. He argued in his postconviction proceedings that his trial counsel failed to present evidence about Petitioner's inexperience with guns, the difficulty in aiming the gun, and Petitioner's PCP and cocaine use and addiction. [20–13] at 4–13. Like the petitioners in *O'Sullivan* and *Anderson*, Petitioner failed to raise his claim for a complete round of state court review by omitting the claim in his petition for leave to appeal to the Supreme Court. The state courts also did not hear the claim during Petitioner's postconviction review. Therefore, Petitioner procedurally defaults the claim that Rule 405(a) violates the Spousal Testimonial Privilege, the Confrontation Clause of the Sixth Amendment, and the Due Process Clause of the Fourteenth Amendment.

Petitioner also procedurally defaulted the claim that he received ineffective assistance of trial counsel when counsel failed to preserve the claim that Rule 405(a) is unconstitutional. As discussed above, a petitioner must assert a particular factual basis for an ineffective assistance of

14

counsel claim in state court to avoid a procedural default. *Pole*, 570 F.3d at 935. Petitioner argued on direct appeal that trial counsel was ineffective for failing to preserve the error that the court effectively precluded him from calling his wife to testify as a character witness, but his petition for leave to appeal does not argue this issue. The ineffective assistance of counsel claims in his petition for leave to appeal argued that his attorney failed to present evidence about the trigger pull of the gun, failed to apprise the jury of the relevance of Petitioner's intoxicated condition, and gave a confusing closing argument. [20–5] at 10–16. Therefore, he did not present an argument to the Illinois Supreme Court that his counsel failed to preserve the claim that Rule 405(a) is unconstitutional.

Petitioner's postconviction appeals, similarly, did not assert that argument. [20–8]; [20–13]. Petitioner argued in both his postconviction appeal and postconviction leave to appeal that counsel failed to utilize Petitioner's addiction and use of PCP and cocaine, failed to present evidence regarding Petitioner's lack of experience with firearms, and failed to present evidence regarding the difficulty in aiming the gun to adequately support a theory of involuntary manslaughter. [20–8] at 21–30; [20–13] at 4–13. Those grounds for ineffective assistance of counsel, again, did not give state courts an adequate opportunity to evaluate Petitioner's claim about counsel's failure to preserve the issue of the constitutionality of Rule 405(a). As Petitioner did not assert that factual basis for ineffective assistance of counsel, that claim is procedurally defaulted. *Pole*, 570 F.3d at 935.

Petitioner also argues that his appellate counsel was ineffective for failing to raise this issue on direct appeal. [7] at 22. To proceed with an ineffective assistance of appellate counsel claim, a petitioner must raise the claim at each level of state court review. *See Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009). In *Smith*, the petitioner tried to argue that appellate counsel was ineffective

in his federal habeas petition but failed to raise that claim in his postconviction petition for leave to appeal. *Id.* Thus, the Seventh Circuit found that the claim for ineffective assistance of appellate counsel was procedurally defaulted. *Id.* Similarly, Petitioner's postconviction appeal and postconviction leave to appeal lack any reference to a claim for ineffective assistance of appellate counsel in his direct appeal. [20–8] at 21–30; [20–13] at 4–13. The Court finds this claim to be procedurally defaulted.

### i. Excuse

A court can excuse a petitioner's procedural default if the petitioner shows that: (1) there is a fundamental miscarriage of justice; or (2) cause for the default and resulting prejudice. *Coleman*, 501 U.S. at 749–50. Petitioner does not argue that there was a fundamental miscarriage of justice, so that argument is waived. *See Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 704 (7th Cir. 2022) ("Perfunctory and undeveloped arguments, as well as arguments that are unsupported by pertinent authority, are waived."). Petitioner also does not meet the requirements for the cause-and-prejudice prong for excuse.

Read liberally, the petition can be viewed as arguing Petitioner's ineffective assistance of trial counsel claim as cause for default: because trial counsel failed to preserve this argument, he could not raise this claim for federal habeas review. [7] at 22. Ineffective assistance of counsel can be grounds for cause for failure to raise a claim. *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (ineffective assistance of counsel must violate the standard established under *Strickland* to be cause for a procedural default). However, the "claim of ineffectiveness must itself have been fairly presented to the state courts before it can establish cause for a procedural default of another claim." *See Lewis*, 390 F.3d at 1026 (citing *Edwards v. Carpenter*, 529 U.S. 446, 452–54, (2000)). As noted above, Petitioner failed to present this ineffective assistance of counsel claim to the Illinois

Supreme Court. Per *Lewis*, then, Petitioner cannot rely on ineffective assistance of counsel as grounds for cause because he procedurally defaulted that claim. *Id.*

Similarly, Petitioner's ineffective assistance of appellate counsel on his direct appeal could also be construed as a possible cause for the default. The argument would be that Petitioner's appellate counsel was ineffective for failing to raise trial counsel's failure to preserve the unconstitutionality of Rule 405(a) for review on appeal. However, this claim is also defaulted. When a petitioner fails to raise ineffective assistance of appellate counsel before the state supreme court, that claim is defaulted. *Smith*, 565 F.3d at 352. Here, Petitioner did not raise this ground for ineffective assistance of his direct appeal counsel in his postconviction appeal or postconviction leave to appeal to the Illinois Supreme Court. [20–8] at 21–30; [20–13] at 4–13. Therefore, Petitioner fails to allege cause. Because Petitioner has not established cause, Claim 2 is procedurally defaulted.

### d. Claim 3 – Ineffective Assistance of Counsel for Advising Petitioner to Testify

Lastly, Petitioner claims ineffective assistance of trial counsel for advising Petitioner to testify, violating the Fifth Amendment right prohibiting self-incrimination, the Sixth Amendment, and the Fourteenth Amendment ensuring the right to due process and the equal protection of the law. [7] at 23–26. Respondent argues that this claim is procedurally defaulted because Petitioner did not raise it for review in the state courts. [19] at 7–8.

As discussed above, Petitioner claimed in his direct appeal that counsel was ineffective for making a confusing closing argument, failing to call a ballistics expert to testify about the inaccuracy of the gun, and not using Petitioner's intoxicated condition to argue recklessness. Petitioner made similar arguments in his petition for leave to appeal and his postconviction

proceedings. Thus, Petitioner did not present a claim for ineffective assistance of trial counsel for advising Petitioner to testify and this claim is procedurally defaulted.

Petitioner argues the Court should still hear the merits of this case because Respondent did not demonstrate why the claim is procedurally defaulted. [23] at 5. Procedural default is an affirmative defense that the State is required to raise and "consequently one that it can waive." *Perruquet v. Briley*, 390 F.3d 505, 515 (7th Cir. 2004). But here, Respondent did not waive procedural default. In their brief Respondent argues: "All of petitioner's claims—apart from… [the second part of Claim 1] are procedurally defaulted because petitioner did not raise them in state court." [19] at 7–8. Respondent then pointed to the direct appeal brief, the petition for leave to appeal, the postconviction petition, the postconviction appeal brief, and the postconviction petition for leave to appeal, to show that Petitioner procedurally defaulted these claims by not raising them for a full round of review in state court. *Id*. at 8. Thus, Respondent properly raised procedural default as an affirmative defense.

Petitioner raises ineffective assistance of appellate counsel as a reason why he did not preserve this claim—that appellate counsel refused to raise this issue on appeal. [7] at 34. Even if this were read as Petitioner arguing cause for procedural default, Petitioner still cannot establish excuse here. To function as cause for procedural default of another claim, Petitioner must have presented the ineffective assistance of counsel claim to state courts. *See Lewis*, 390 F.3d at 1026. He did not raise this ground for ineffective assistance of appellate counsel on postconviction review. Thus, he failed to allege cause. Because Petitioner procedurally defaults this claim and cannot establish excuse, the Court does not reach the claim's merits.

## II. Ineffective Assistance of Counsel for Trial Counsel's Closing Argument

Petitioner's only preserved claim on habeas review is for ineffective assistance of trial counsel for misleading the jury during closing arguments about the distinction between knowing and reckless conduct. Petitioner argues that his trial counsel was ineffective when he attempted to explain the elements between first-degree murder and involuntary manslaughter. [7] at 18–19. According to Petitioner, his counsel convoluted the elements of murder and manslaughter and conceded Petitioner's guilt of first-degree murder. *Id*. As such, Petitioner argues counsel's performance fell below an objective standard of reasonableness and was deficient. [23] at 11–12. Respondent contends that the state court reasonably applied the *Strickland* ineffective assistance of counsel standard: counsel's performance was not deficient and did not prejudice Petitioner. [19] at 10–13.

Federal courts can only issue habeas relief on a claim the state court adjudicated on the merits if that court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Schmidt v. Foster*, 911 F.3d 469, 476–77 (7th Cir. 2018) (*en banc*) (quoting § 2254(d)(1) & (2)). A state court decision is "contrary to" when it "applies a rule different from the governing law set forth" in Supreme Court cases or if it decides a case differently than the Supreme Court did "on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). An "unreasonable application" is when "the state court correctly identifies the governing legal principle . . . but unreasonably applies it to the facts of the particular case." *Id*. "To satisfy the high unreasonable application of bar, a habeas petitioner is required to show that the state court's ruling was so lacking in justification that there was an error well understood and comprehended in

existing law beyond any possibility for fair minded disagreement." *Corral v. Foster*, 4 F.4th 576, 582 (7th Cir. 2021) (cleaned up) (internal citations omitted). This standard is difficult to meet, and a federal court may grant habeas relief "solely in those relatively uncommon cases in which state courts veer well outside the channels of reasonable decision-making about federal constitutional claims[.]" *Schmidt*, 911 F.3d at 477 (internal quotations omitted).

To succeed on an ineffective assistance of counsel claim, Petitioner must show (1) that counsel's "performance was deficient," and (2) that the counsel's deficient performance "prejudiced the defense." *Strickland*, 466 U.S. at 687. "Surmounting *Strickland*'s high bar is never an easy task." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). Moreover, the standards created by *Strickland* and § 2254(d) are "highly deferential" so "establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Id.* "[A] federal court must be 'doubly deferential' and give a deferential look at counsel's performance through the 'deferential lens' of AEDPA." *Winfield v. Dorethy*, 956 F.3d 442, 451 (7th Cir. 2020) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). The question for the Court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

To establish that counsel's performance was deficient, counsel's representation must fall "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. A petitioner must identify specific acts or omissions of counsel that were "outside the wide range of professionally competent assistance." *Id.* at 690. For prejudice, Petitioner "must 'affirmatively prove prejudice,' meaning that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Dunn v. Jess*, 981 F.3d 582, 595 (7th Cir. 2020) (quoting *Strickland*, 466 U.S. at 693–94). "A reasonable probability is a probability

sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Courts do not need to address both performance and prejudice if the defendant fails to sufficiently show at least one of the prongs. *Id*. at 697.

At trial, Petitioner's counsel argued in closing that Petitioner should be found guilty of involuntary manslaughter, not first-degree murder. [20–16] at 880:24–904:23. Notably, counsel attempted to explain the difference between first-degree murder and involuntary manslaughter:

> "That is stronger and different than what [the State has] to prove for involuntary manslaughter. Involuntary manslaughter is conscious disregard and known risk is likely – likely to cause death or great bodily harm. Strong probability for murder requires something else. In common parlance, it requires knowledge; and you know from common sense and life experience, that knowledge is knowledge. You know it was a strong probability, that you know. It's much, much, much stronger, much, much – you know that you're creating – that you're doing what you're doing."[6]

The last state court to address this claim on the merits was the appellate court on Petitioner's direct appeal. The appellate court correctly articulated *Strickland* as the standard governing an ineffective assistance of counsel claim. *Guardiola*, 2019 IL App (1st) 151419-U, ¶¶ 60, 61, 64, 65. Under the performance prong, the appellate court found that Petitioner failed to show that counsel's performance fell below an objective standard of reasonableness. *Id*. ¶ 65. Examining the closing argument in its entirety, the appellate court found that counsel stated several times that Petitioner "did not have the intent to kill and did not know that his actions created a likelihood of death or great bodily harm." *Id*.

The appellate court's decision was not unreasonable. The Sixth Amendment doesn't require "perfect advocacy"—only that counsel is reasonably competent. *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003). The Seventh Circuit noted that courts must evaluate statements from closing arguments in the context of the entire argument to determine whether counsel's performance was

---

[6] *Guardiola*, 2019 IL App (1st) 151419-U, ¶ 64.

deficient. *See United States v. Kozinski*, 16 F.3d 795, 817 (7th Cir. 1994). In *Kozinski*, the petitioner argued that counsel made a disorganized and ineffective closing argument, pointing to two particular statements that allegedly prejudiced him. *Id*. But, the Seventh Circuit examined the arguments immediately surrounding those statements and the rest of the argument, finding that the statements were used to set up counsel's larger argument. *Id*. The court found that the statements did not deny the petitioner effective assistance of counsel. *Id*.

Small, inarticulate statements in closing arguments do not make counsel incompetent. In *U.S. ex rel. Vidaurri v. Hardy*, the petitioner argued that his counsel was ineffective because of a clumsy statement during the closing argument. 2012 WL 1068735, at *18 (N.D. Ill. Mar. 29, 2012). Counsel attempted to make a sarcastic comment during the closing argument to argue the broader point that the petitioner should be viewed as less blameworthy than others involved in the incident. *Id*. The court held that a "single isolated comment," even if inarticulate, did not mean that counsel's performance was deficient. *Id*.

Here, counsel's closing argument was consistent with an involuntary manslaughter defense. Counsel recounted the events of the night, emphasizing that Petitioner lacked the intent to kill Rivera: that they were friends from high school ([20–16] at 884:24-885:2); that the voicemail was not evidence of intention to kill (*Id*. at 88:4-21); that the way the bullet entered Rivera's head suggested that Petitioner accidentally shot him (*Id*. at 894:13–20); and that "the evidence shows beyond a reasonable doubt, is the mental state of conscious disregard for a risk." (*Id*. at 899:1–3). The excerpt of counsel's closing argument was not very clear, but counsel does not have to be "perfect" or "very good" to be constitutionally adequate. *Anderson v. United States*, 94 F.4th 564, 581 (7th Cir. 2024). Looking at the closing argument as a whole, like in *Kozinski*, counsel's performance was not deficient. 16 F.3d at 817. In the lines surrounding the excerpt,

counsel went through each type of first-degree murder under 720 Ill. Comp. Stat. Ann. 5/9-1 to argue that they do not apply to this case and that the jury should find Petitioner guilty of involuntary manslaughter instead. [20–16] at 897:16–899:3.  There, counsel attempted to persuade the jury that there was reasonable doubt that Petitioner intended to kill or knew that his act created a strong probability of death or great bodily harm to Rivera.  Just because counsel made an inarticulate statement during closing arguments, like in *Vidaurri*, does not mean he was incompetent. 2012 WL 1068735, at *18.  The Court finds that the appellate court's application of *Strickland*'s performance prong was not unreasonable.  Therefore, the Court denies this part of Claim 1 on its merits.

## III.    Certificate of Appealability

As a final matter, pursuant to Rule 11 of the Rules Governing § 2254 Cases, the Court must either issue or deny a certificate of appealability.  To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (cleaned up).  As explained above, Petitioner's claims are procedurally defaulted or otherwise without merit under AEDPA standards.  Nothing before the Court suggests that reasonable jurists would debate the outcome of the petition or find a reason to encourage Petitioner to proceed further.  Accordingly, the Court declines to issue him a certificate of appealability.

## Conclusion

For the reasons stated above, Petitioner's writ of habeas corpus [7] pursuant to 28 U.S.C.

§ 2254 is denied.


**SO ORDERED.**


Dated:  August 8, 2025

_____

Sunil R. Harjani
United States District Judge